IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2015 Term

_____

No. 14-0245

_____

**FILED**

**April 9, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

DAVID BALLARD, WARDEN, ex rel.
MOUNT OLIVE CORRECTIONAL CENTER
Respondent Below, Petitioner

v.

PATRICK J. MECKLING,
Petitioner Below, Respondent

_____

Appeal from the Circuit Court of Ohio County
The Honorable David J. Sims, Judge
Civil Action No. 09-C-163

REVERSED

_____

Submitted: March 4, 2015
Filed: April 9, 2015

Scott R. Smith, Esq.
Ohio County Prosecuting Attorney
Brian A. Ghaphery, Esq.
Assistant Ohio County
Prosecuting Attorney
Wheeling, West Virginia
Counsel for the Petitioner

Brent A. Clyburn, Esq.
Law Office of Brent A. Clyburn
Wheeling, West Virginia
Counsel for the Respondent

JUSTICE KETCHUM delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus Point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

2.      "Ordinarily, it is not reversible error nor grounds for a mistrial to proceed to try a criminal defendant with a jury panel that may have seen him in handcuffs for a brief period of time prior to trial." Syllabus Point 2, *State v. Linkous*, 177 W.Va. 621, 355 S.E.2d 410 (1987).

3.      Ordinarily, it is not reversible error nor grounds for a mistrial to continue to try a criminal defendant after one or more jurors may have seen the defendant in handcuffs for a brief period of time after the trial has begun.

Justice Ketchum:

Petitioner Warden David Ballard ("Warden Ballard") appeals the February 4, 2014, order of the Circuit Court of Ohio County that granted Respondent Patrick J. Meckling's ("Mr. Meckling") writ of habeas corpus petition. Following a jury trial, Mr. Meckling was convicted of one felony count of abduction with intent to defile and one misdemeanor count of battery. In his petition for a writ of habeas corpus, Mr. Meckling argued that he did not receive a fair trial because he was briefly placed in handcuffs in view of some members of the jury. The circuit court agreed with Mr. Meckling, granted the requested writ of habeas corpus, and vacated his convictions. After entry of the circuit court's order, Warden Ballard filed the present appeal with this Court.

Upon review, we reverse the circuit court's February 4, 2014, order granting Mr. Meckling's habeas corpus petition.

## I.

### A. FACTUAL AND PROCEDURAL BACKGROUND

In September 2007, Mr. Meckling was indicted by the Ohio County grand jury on four counts: (1) kidnapping in violation of W.Va. Code § 61-2-14a [1999]; (2) abduction with intent to defile in violation of W.Va. Code § 61-2-14 [1984]; (3) malicious assault in violation of W.Va. Code § 61-2-9 [2004]; and (4) "driving while revoked for driving under the influence of alcohol, second offense" in violation of W.Va. Code § 17B-4-3 [2004]. This indictment resulted from an incident in which Mr.

1

Meckling allegedly assaulted and kidnapped his longtime girlfriend ("alleged victim") outside of a bar and allegedly forced her to give him money to buy crack cocaine.

On September 19, 2007, Mr. Meckling entered a "not guilty" plea to all four counts in the indictment and was released after posting a $50,000.00 surety bond. The bond stated that Mr. Meckling was not to have any contact with the alleged victim. Four days before Mr. Meckling's trial was scheduled to begin, the State of West Virginia filed a motion to revoke Mr. Meckling's bond after discovering that he had contacted the alleged victim. The circuit court granted the State's motion and issued a warrant for Mr. Meckling's arrest. However, Mr. Meckling was not immediately apprehended and had not been taken into custody prior to appearing for his trial on October 29, 2007.

Mr. Meckling was not taken into custody upon appearing for his trial on the morning of October 29, 2007. Instead, a jury was seated, both sides made opening statements and the alleged victim testified. Following the alleged victim's testimony, the court was preparing to take its lunch recess. The court excused the jurors for lunch and then ordered that Mr. Meckling be taken into custody for violating his bond. Mr. Meckling was then placed in handcuffs and taken into custody.

After the lunch recess, Mr. Meckling's lawyer moved for a mistrial, arguing that Mr. Meckling was prejudiced by being placed in handcuffs and taken into custody in front of the jury. The circuit court denied this motion, stating, "He's in custody because he violated the terms of his bond. Period. That could happen. There's no, no other way of handling that matter."

2

It is unclear how many jurors witnessed Mr. Meckling being placed in handcuffs. The circuit court's order granting Mr. Meckling's habeas corpus petition states that Mr. Meckling was "handcuffed and taken into custody in the presence of at least some of the jurors." The circuit court's order does not cite to testimony from Mr. Meckling or any other witness who testified that the jury saw him being placed in handcuffs. Instead, the circuit court's order cites the portion of the trial transcript in which Mr. Meckling's trial lawyer moved for a mistrial and stated that Mr. Meckling had been "taken into custody and . . . handcuffed in front of the jury[.]" At the time Mr. Meckling's trial lawyer moved for a mistrial, neither counsel for the State, nor the trial judge attempted to refute the statement that Mr. Meckling had been "handcuffed in front of the jury." In addition to this statement from Mr. Meckling's trial lawyer, Mr. Meckling submitted an affidavit from one of the jurors who stated, "I do recall observing, during a break in trial proceedings . . . [Mr.] Meckling being shackled and taken into custody." Mr. Meckling also submitted an affidavit from his trial lawyer who stated, "I do recall observing Mr. Meckling being shackled and taken into custody . . . while in the presence of the jury."[1]

---

[1] While it is unclear how many of the jurors witnessed Mr. Meckling being placed in handcuffs, Warden Ballard concedes in his brief to this Court that "it appears that at least one petit juror witnessed [Mr. Meckling] being placed in handcuffs."

3

Mr. Meckling was not placed in handcuffs following the lunch recess and was not restrained in any manner for the duration of his trial. At the conclusion of his trial, the jury found Mr. Meckling guilty of the felony offense of abduction with intent to defile and of the misdemeanor offense of battery, a lesser included offense of malicious assault.[2] After the jury returned its verdict finding Mr. Meckling guilty on these two counts, the State filed a recidivist information charging Mr. Meckling with being the same person who had previously been convicted of two felony offenses. Mr. Meckling admitted that he was the same person who had been convicted of these previous felony offenses. The circuit court sentenced Mr. Meckling to a term of imprisonment for life.[3]

Mr. Meckling's initial appeal to this Court was refused by order entered on May 22, 2008.[4] After this Court refused his petition for appeal, Mr. Meckling filed a *pro se* petition for a writ of habeas corpus which the circuit court denied by order entered on December 9, 2008. The circuit court did not conduct a hearing on this petition and stated

---

[2] This trial was only on the abduction with intent to defile count and the malicious assault count. The circuit court had previously granted a severance motion on the other counts contained in the indictment.

[3] The circuit court also sentenced Mr. Meckling to serve one year for his conviction of misdemeanor battery, and ruled that this sentence "shall run concurrent with the life sentence."

[4] Mr. Meckling raised two errors in this petition: (1) the circuit court erred by failing to grant a mistrial after it ordered that he be taken into custody in view of the jury, and (2) the circuit court erred when it held that only two of the three felonies required for a life recidivist sentence need to be violent.

in its order that it had "examined the petition and the underlying criminal matters and has concluded that the grounds for relief [Mr. Meckling] has asserted have been previously and finally adjudicated or waived."

Mr. Meckling renewed his *pro se* petition for a writ of habeas corpus, arguing that the circuit court did not make specific findings of facts and conclusions of law in its December 9, 2008, order. The circuit court denied Mr. Meckling's renewed motion, concluding that the court's previous order had "made the specific finding of fact and conclusion of law that 'the grounds for relief the Petitioner has asserted have been previously and finally adjudicated or waived.'"

On March 15, 2009, Mr. Meckling filed a *pro se* petition for a writ of habeas corpus with this Court. By order entered on May 13, 2009, this Court remanded the matter to the circuit court for an omnibus habeas hearing and ordered that the circuit court appoint a lawyer to represent Mr. Meckling. The circuit court appointed counsel for Mr. Meckling. By order entered on February 4, 2014, the circuit court granted Mr. Meckling's petition for a writ of habeas corpus, concluding that Mr. Meckling did not receive a fair trial because he was briefly placed in handcuffs in view of "at least some of the jurors." The circuit court's order states that the trial court "deprived [Mr. Meckling] of his due process rights, as such have been prescribed under both State and Federal Constitutions, when it ordered him shackled during the course of the trial in the presence of the jury, and security and order did not warrant such intrusive conduct." The circuit court vacated Mr. Meckling's convictions of felony abduction with intent to defile and

misdemeanor battery, and vacated Mr. Meckling's recidivist sentence of imprisonment for life.[5]  After entry of the circuit court's order, Warden Ballard filed the present appeal.

## II.

## STANDARD OF REVIEW

Our standard of review is set forth in Syllabus Point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).  It states:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

With this standard in mind, we proceed to consider the arguments of the parties.

## III.

## ANALYSIS

The issue is whether the circuit court abused its discretion by granting Mr. Meckling's writ of habeas corpus petition based on its ruling that he did not receive a fair

---

[5] The circuit court's order states: "Petitioner's sentence . . . is automatically vacated as a result of the underlying felony conviction being vacated."  The circuit court stayed the execution of its order "to permit the Respondent [Warden Ballard] an opportunity to appeal . . . if it so chooses."

6

trial because "at least some of the jurors" briefly observed Mr. Meckling being handcuffed during a trial recess. Warden Ballard asserts that the circuit court erred by relying on previous cases from this Court addressing whether a defendant may be handcuffed or shackled *throughout the duration of the trial*. These cases are distinguishable from the present case, according to Warden Ballard, because Mr. Meckling was not handcuffed throughout the duration of the trial, rather, he was briefly placed in handcuffs during the lunch recess because he violated the terms of his bond. By contrast, Mr. Meckling states that the circuit court correctly determined that he suffered substantial prejudice as a result of being handcuffed in front of "at least some of the jurors."

This Court addressed whether a criminal defendant may be shackled or handcuffed throughout the duration of his or her trial in *State v. Brewster*, 164 W.Va. 173, 261 S.E.2d 77 (1979). In *Brewster*, the criminal defendant was forced to wear handcuffs throughout the duration of his armed robbery trial. After being convicted, the defendant appealed, arguing that he was prejudiced as a result of being forced to wear handcuffs *throughout* the trial. This Court agreed and held in Syllabus Point 3 of *Brewster* that "[a] criminal defendant has the right, absent some necessity relating to courtroom security or order, to be tried free of physical restraints."[6]

---

[6] In *Brewster*, the trial court did not make a record to determine if manifest necessity existed to place the defendant in handcuffs. This Court therefore remanded the

(continued . . .)

This Court again addressed the propriety of placing a criminal defendant in physical restraints *throughout* the duration of his or her trial in *State v. Peacher*, 167 W.Va. 540, 280 S.E.2d 559 (1981). In *Peacher*, the Court stated that "physical restraints should be used only after an evidentiary hearing on the question of whether such security measures are justified by the circumstances of the case." *Id*. at 556, 280 S.E.2d at 572.[7]

The circuit court's order granting Mr. Meckling's habeas corpus petition relies heavily on *Brewster* and *Peacher*. We find these cases to be factually distinguishable from the present case, however, because the defendants in *Brewster* and

---

case to the trial court for an evidentiary hearing to determine if sufficient facts existed to warrant trying the defendant in handcuffs.

[7] The Court in *Peacher* set forth three reasons why courts generally disfavor placing a criminal defendant in physical restraints throughout the duration of his or her trial:

> There are three valid considerations underlying the reluctance on the part of courts to permit the trial of a defendant in physical restraints. The first is that such treatment of a defendant must inevitably cause the jury to infer that the judge thinks him to be a dangerous man. *State v. Kring*, 64 Mo. 591 (1877). Physically restraining the defendant may also interfere with his ability to participate in his own defense or his privilege of being a competent witness on his own behalf. *People v. Harrington*, 42 Cal. 165 (1871). The final consideration commonly advanced for not favoring the practice is that such treatment of the defendant detracts from the dignity and decorum of the judicial process. *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

*Id*. at 556, 280 S.E.2d at 571.

*Peacher* were forced to wear handcuffs throughout the duration of their trials.[8] By contrast, Mr. Meckling was in handcuffs in view of "at least some of the jurors" for a brief period of time during a trial recess.

This Court addressed the distinction between a criminal defendant who is forced to wear physical restraints throughout the duration of his or her trial with a criminal defendant appearing in physical restraints for a brief period of time in *State v. Linkous*, 177 W.Va. 621, 355 S.E.2d 410 (1987). In *Linkous*, the defendant was brought into the courtroom in handcuffs in view of the prospective jurors. Before jury selection began, defense counsel moved that a new jury panel be selected, arguing that the existing panel was prejudiced by having seen the defendant enter the courtroom in handcuffs.

---

[8] The circuit court's order also relies on *State ex rel. McMannis v. Mohn*, 163 W.Va. 129, 254 S.E.2d 805 (1979), and *Estelle v. Williams*, 425 U.S. 501 (1976), two cases addressing whether a criminal defendant may be forced to wear identifiable prison attire during their trial. In *McMannis*, the defendant was tried while wearing clothes that were "prison issue bearing the inscriptions 'West Virginia Penitentiary' and 'WVP' both on the seat of the pants and the back of the shirt." *McMannis*, 163 W.Va. at 131, 254 S.E.2d at 807. Similarly, the defendant in *Estelle* went to trial wearing clothes that were clearly marked as prison issue. The circuit court's order cites Syllabus Point 2 of *McMannis*, which states, in relevant part, "A criminal defendant has the right under the Due Process Clause of our State and Federal Constitutions not to be forced to trial in identifiable prison attire." As in *Brewster* and *Peacher*, we find that *McMannis* and *Estelle* are distinguishable from the present case because Mr. Meckling was not forced to wear "identifiable prison attire" during his trial. This Court has drawn a clear distinction between a criminal defendant being tried while in handcuffs and a criminal defendant on trial while wearing identifiable prison attire: "There is a critical distinction between being forced to wear identifiable prison clothing and being forced to appear in physical restraints. The prison clothing serves no legitimate purpose, whereas physical restraints may be necessary in certain cases." *Brewster*, 164 W.Va. at 181, 261 S.E.2d at 82.

9

The trial court denied the defense motion, stating that the period of time the defendant appeared in handcuffs was brief. The defendant was subsequently convicted and appealed to this Court, arguing that he was prejudiced because the jurors briefly observed him in handcuffs. This Court rejected that argument, stating:

> There is a major distinction between *Brewster* and this case as to the extent of time the defendant was in restraints before the jury. In *Brewster*, the defendant was required to remain in physical restraints throughout his entire criminal trial. This case involves only an initial appearance in handcuffs which were removed shortly after he was brought into the courtroom. Most courts that have dealt with this question conclude that ordinarily it is not reversible error nor grounds for a mistrial to proceed to try a criminal defendant with a jury panel that may have seen him in handcuffs for a brief period of time prior to trial.

*Id*. at 624, 355 S.E.2d at 413. Based on this reasoning, the Court held in Syllabus Point 2 of *Linkous* that, "Ordinarily, it is not reversible error nor grounds for a mistrial to proceed to try a criminal defendant with a jury panel that may have seen him in handcuffs *for a brief period of time* prior to trial." (Emphasis added).

A number of courts in other jurisdictions have examined this issue and come to the same conclusion as this Court's holding in *Linkous*: a juror's brief observation of a criminal defendant in handcuffs does not compel reversal of the defendant's conviction. For instance, in *Cooper v. State*, 912 So.2d 1150, 1158 (Ala. Crim. App. 2005), the court observed, "It is not ground for a mistrial that an accused felon appears in the presence of the jury in handcuffs when such appearance is only a part of going to and from the courtroom. This is not the same as keeping an accused in

10

shackles and handcuffs while being tried." The First Circuit addressed this issue in *United States v. Pina*, 844 F.2d 1, 8 (1st Cir. 1988), finding that any danger of prejudice to a defendant is slight if a juror's view of the defendant in custody is brief and inadvertent. In *Wilson v. McCarthy*, 770 F.2d 1482, 1485-86 (9th Cir. 1985), the Ninth Circuit held that a jury's brief observation of a defendant in custody does not compel reversal in the absence of an affirmative showing of actual prejudice. The Missouri Court of Appeals rejected a defendant's argument that he was prejudiced when the jury observed him being handcuffed on his way from the courtroom to the restroom, stating:

> A brief, inadvertent exposure of the jury to a handcuffed defendant while [the] defendant is being escorted from one place to another does not deprive [the] defendant of a fair trial. This is so because it is a normal and regular, as well as a highly desirable and necessary, practice to handcuff prisoners when they are being taken from one place to another, and the jury is aware of this. Thus, a brief, inadvertent exposure to the jury of a handcuffed defendant does not deprive the defendant of a fair trial and cannot be said to result in prejudice. As such, even if jurors did briefly observe the appellant in handcuffs, as claimed, we find no prejudice to him from this fact.

*State v. Swopes*, 343 S.W.3d 705, 709-10 (Mo. App.W.D. 2011) (internal quotations and citations omitted).[9]

---

[9] *See also Bruce v. State*, 318 Md. 706, 569 A.2d 1254 (1990) (finding that inadvertent viewing by jury of handcuffs being removed from defendant as jury was being led into courtroom did not prejudice defendant's right to fair trial); *People v. Harper*, 47 N.Y.2d 857, 392 N.E.2d 1244 (1979) (concluding that some jurors who briefly observed a criminal defendant in handcuffs during the court's lunch recess was,

(continued . . .)

11

In the present case, Mr. Meckling was handcuffed and taken into custody during a trial recess. It is undisputed that the amount of time any juror could have seen Mr. Meckling in handcuffs was brief. Similarly, it is undisputed that Mr. Meckling was not in handcuffs after the lunch recess and was free of any physical restraints for the remainder of his trial. Thus, there is a major distinction between the present case in which Mr. Meckling was briefly placed in handcuffs, and *Brewster* and *Peacher* in which the defendants were handcuffed for the duration of their trials.

Unlike in *Brewster* and *Peacher*, we find that the present case is analogous to *Linkous*—the defendant in *Linkous* and Mr. Meckling were both briefly placed in handcuffs, in the courtroom, in view of some members of the jury. While the time period in which the jurors observed Mr. Linkous (prior to the beginning of his trial) and Mr. Meckling (during the lunch recess after the trial had commenced) wearing handcuffs was different, we find that the Court's holding in *Linkous* is applicable to the present case because the key determination is the *amount of time* the defendant was observed wearing handcuffs. We therefore hold that ordinarily, it is not reversible error nor grounds for a

---

by itself, insufficient to deny the defendant a fair trial); and *Wright v. State of Texas*, 533 F.2d 185, 187 (5th Cir. 1976) (finding that brief and inadvertent exposure to jurors of defendant in handcuffs is not so inherently prejudicial as to require a mistrial, and the defendant bears the burden of affirmatively demonstrating prejudice).

mistrial to continue to try a criminal defendant after one or more jurors may have seen the defendant in handcuffs for a brief period of time after the trial has begun.[10]

Applying this holding to the present case, we conclude that Mr. Meckling being handcuffed in view of "at least some of the jurors" for a brief period of time was neither reversible error nor grounds for a mistrial. Mr. Meckling has not demonstrated that any actual prejudice occurred as a result of him being placed in handcuffs for a brief period of time in view of "at least some of the jurors." The affidavit from the juror who stated that he observed Mr. Meckling being placed in handcuffs does not state that the jury harbored any prejudice against Mr. Meckling as a result of seeing him being placed in handcuffs. Nor does that juror's affidavit state that he was unable to fairly weigh the evidence as a result of briefly seeing Mr. Meckling in handcuffs.

Based on all of the foregoing, we find that the circuit court abused its discretion by granting Mr. Meckling's habeas corpus petition on the basis that he did not receive a fair trial because he was briefly handcuffed during a trial recess in view of some

_____

[10] While we hold that it is not ordinarily reversible error nor grounds for a mistrial for a defendant to be observed wearing handcuffs by one or more jurors for a brief period of time after the trial has begun, we agree with this Court's statement in *Linkous* that "[t]he better practice is to remove restraints before a prisoner is brought before the jury [and that] . . . reasonable efforts should be made to prevent prisoners under such restraints from being seen" by jurors. *Linkous*, 177 W.Va. at 624, 355 S.E.2d at 413. Additionally, in the event that a defendant is observed wearing handcuffs for a brief period of time by the jury, the circuit court should, if requested by the defendant, give a curative instruction to the jury. In the present case, Mr. Meckling's lawyer did not request that a curative instruction be given.

13

members of the jury. In so ruling, the circuit court relied on two cases, *Brewster* and *Peacher*, that are factually distinguishable from the present case. Similarly, the circuit court failed to apply this Court's holding in *Linkous* that a juror's brief view of a defendant in handcuffs is not sufficient to establish reversible error, nor grounds for a mistrial.

## IV.

## CONCLUSION

The circuit court's February 4, 2014, order granting Mr. Meckling's petition for a writ of habeas corpus is reversed.

Reversed.

14